[782 NYS2d 242]

THE GAP, INC., Respondent, v FIREMAN'S FUND INSURANCE COMPANY, Appellant.

First Department, September 16, 2004

## APPEARANCES OF COUNSEL

*Lustig & Brown, LLP*, New York City (*Michael L. Stonberg* and *Randolph E. Sarnacki* of counsel), for appellant.

*McAndrew, Conboy & Prisco, LLP*, Woodbury (*Robert M. Ortiz* of counsel), for respondent.

## OPINION OF THE COURT

ELLERIN, J.

Plaintiff The Gap was named as an additional insured on the standard commercial general liability portion of a portfolio insurance policy issued by defendant Fireman's Fund Insurance Company to nonparty Fisher Development, Inc. (FDI), a general construction contractor engaged to perform construction and improvement work at several of The Gap's sites. During the policy period, The Gap sustained damage to its premises at 45 West 18th Street when a heat pipe cap installed by one of FDI's subcontractors cracked and ruptured. The question before us is whether The Gap is entitled under the policy to coverage for the damage to its property.

The construction agreement between The Gap and FDI provided that each would maintain certain policies of insurance:

> "17. Insurance.

> "A. FDI's Obligations. FDI shall maintain the following insurance with a company or companies reasonably satisfactory to The Gap:

> "(i) Commercial general liability insurance with a combined single limit of at least Ten Million Dollars ($10,000,000) . . . ; and

> "(ii) statutory worker's compensation and employer's liability insurance . . . ; and

> "(iii) automobile liability insurance . . . ; and

> "(iv) such other insurance as may be required by The Gap, any landlord or any Addendum to this Agreement.

> "FDI shall furnish to The Gap certificates of such policies evidencing that:

"(i) The Gap, its subsidiary corporations and affiliated companies, and their respective employees, and such other entity or entities as The Gap may direct, are named as additional insureds for any loss arising out of or in any way connected with the Work;
. . .

"B. The Gap's Obligations. The Gap shall maintain property insurance, or otherwise bear the risk of loss or damage to the Work, including materials and equipment, (but not including tools belonging to FDI or their subcontractors) intended for installation and any other loss customarily covered by so-called 'builder's risk' insurance. This obligation of The Gap shall extend to FDI and its subcontractors and suppliers to the extent of their interest in the Work."

FDI was the named insured on a portfolio insurance policy issued by Fireman's Fund. The Gap was added as an additional insured on the commercial general liability (CGL) portion of the policy in an endorsement that provided: "Who is an insured (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your work for that insured by or for you."

The insuring agreement for the CGL coverage provided:

"Coverage A. Bodily Injury and Property Damage Liability

"1. Insuring Agreement

"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies."

The policy also contained an "owned property" exclusion, which provided:

"This insurance does not apply to: . . .

"j. Property damage to:

"(1) Property you own, rent, or occupy; . . .

"(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing

operations, if the property damage arises out of those operations; or

"(6) That particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it."

The words, "you" and "insured," were defined as follows:

"Throughout this policy the words you and your refer to the Named Insured shown in the Declarations. The words we, us and our refer to the company providing this insurance.

"The word insured means any person or organization qualifying as such under SECTION II—WHO IS AN INSURED."

The Gap contends that the owned property exclusion, which refers to property "you own, rent, or occupy," applies only to the named insured and not to an additional insured such as itself. Fireman's Fund argues that, as an additional insured only under the general liability portion and not under the property portion of the policy, The Gap is not entitled to coverage for property damage.

"The meaning of a writing may be distorted where undue force is given to single words or phrases" (*Empire Props. Corp. v Manufacturers Trust Co.*, 288 NY 242, 248 [1942]). Examining the policy as an integrated whole to determine its purpose and effect and the apparent intent of the parties (*see Murray Oil Prods. v Royal Exch. Assur. Co.*, 21 NY2d 440, 445 [1968]), we find that the policy does not cover The Gap for damage to its own property.

The policy under which The Gap is named as an additional insured is a standard commercial general liability insurance policy, written on a standard Insurance Services Office (ISO) form. Since the purpose of general liability insurance is to provide coverage for liability to third parties (*see* 20 Holmes' Appleman on Insurance 2d § 129.1 [B], at 4), the standard CGL policy does not cover damage to property owned by the insured (*id.* § 129.2, at 166, Commercial General Liability Coverage Form § I [2] exclusion [j]). A CGL policy pays a third-party claimant according to a judgment or settlement against the insured (*see Great N. Ins. Co. v Mount Vernon Fire Ins. Co.*, 92 NY2d 682, 688 [1999], citing 1 Holmes, *supra*, § 3.2).

In contrast, insurance coverage for damage to property owned by the insured, or "first-party coverage," pays the insured the proceeds when the damage occurs (*Great N. Ins., supra* at 687); it protects an interest "wholly different" from that protected by third-party coverage (*id.* at 688). "The principal distinction between liability and property insurance is that liability insurance covers one's liability to *others* for bodily injury or property damage, while property insurance covers damage to one's *own* property" (Postner and Rubin, New York Construction Law Manual § 10.06 [Coverage], at 380).

First-party coverage may be provided in a separate and distinct property insurance policy or, as in the instant case, in a separate portion of a portfolio policy. The Gap contends that since it is not named as an additional insured under the portion of the policy that provides FDI coverage for property damage, it may reasonably be covered for property damage under the liability portion of the policy. However, it would be anomalous for a named insured to receive first-party coverage under the property portion of an insurance policy while an additional insured received first-party coverage under the general liability portion of the policy, and such an anomaly cannot be assumed to be the intent of the parties to the insurance contract. That it was not the intent of FDI and The Gap in the instant case is manifest in the construction agreement between them, which expressly obligated The Gap to maintain its own property insurance.

In view of our decision, we do not reach The Gap's remaining contentions.

Accordingly, the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered July 19, 2002, which denied defendant's motion for summary judgment dismissing the complaint and declaring that it has no duty under the policy of insurance to indemnify plaintiff for its loss, granted plaintiff's cross motion for partial summary judgment on the issue of liability, and declared that plaintiff is entitled to recover for its property damage under the insurance policy, should be reversed, on the law, without costs, defendant's motion for summary judgment declaring that no coverage exists in favor of plaintiff under the policy granted, the complaint otherwise dismissed and plaintiff's cross motion for partial summary judgment denied. The Clerk is directed to enter judgment accordingly.

NARDELLI, J.P., TOM, WILLIAMS and LERNER, JJ., concur.

Order, Supreme Court, New York County, entered July 19, 2002, reversed, on the law, without costs, defendant's motion for summary judgment declaring that no coverage exists in favor of plaintiff under the insurance policy granted, the complaint otherwise dismissed and plaintiff's cross motion for partial summary judgment denied. The Clerk is directed to enter judgment accordingly.