Hilgreen v Pollard Excavating, Inc. (2022 NY Slip Op 06669)

Hilgreen v Pollard Excavating, Inc.

2022 NY Slip Op 06669

Decided on November 23, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 23, 2022

534185
[*1]Matthew Hilgreen, Plaintiff,
v
Pollard Excavating, Inc., et al., Defendants, and Wendy Pollard, as Administrator of the Estate of John J. Pollard III, et al., Defendants and Third-Party Plaintiffs-Respondents; Central Mutual Insurance Company, Third-Party Defendant-Appellant, et al., Third-Party Defendants.

Calendar Date:October 19, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Reynolds Fitzgerald and Ceresia, JJ.

Rivkin Radler LLP, Uniondale (Michael C. Cannata of counsel), for third-party defendant-appellant.
E. Stewart Jones Hacker Murphy, LLP, Troy (Thomas J. Higgs of counsel), for third-party plaintiffs-respondents.

Egan Jr., J.P.
Appeal from an order of the Supreme Court (Christina L. Ryba, J.), entered September 15, 2021 in Albany County, which, among other things, denied a motion by third-party defendant Central Mutual Insurance Company to dismiss the third amended third-party complaint.
As set forth in our prior decision in this matter (193 AD3d 1134 [3d Dept 2021], appeal dismissed 37 NY3d 1002 [2021]), plaintiff was purportedly injured in June 2016 when he fell on a staircase outside of his apartment on Main Street in the Village of Altamont, Albany County (hereinafter the subject property). In 2018, he commenced an action against John J. Pollard III and Clinda Pollard (hereinafter collectively referred to as the Pollards), the owners of the subject property, and defendant Pollard Excavating, Inc., a corporate entity owned and operated by the Pollards. He commenced a second action against a similar corporate entity, defendant Pollard Disposal Service, Inc., and the two actions were then consolidated pursuant to the parties' stipulation.
The Pollards unsuccessfully sought a defense and indemnification under multiple insurance policies, including, as is relevant here, one issued to Pollard Excavating that provided premises liability coverage for the subject property and that had been issued by third-party defendant Central Mutual Insurance Company. The Pollards thereafter commenced a third-party action against Central Mutual and others that sought, among other things, a declaration that they were entitled to coverage under the Central Mutual policy and a defense and indemnification in this case. The third-party complaint was subsequently amended to, in relevant part, advance claims for reformation of the Central Mutual policy due to mutual mistake and for declaratory relief. Supreme Court issued an order in 2019 that, among other things, denied Central Mutual's motion to dismiss the amended third-party complaint and granted the Pollards' cross motion for leave to serve a second amended third-party complaint. Supreme Court denied Central Mutual's motion to dismiss that pleading and directed it to serve an answer; upon appeal, this Court modified and granted the motion without prejudice (193 AD3d at 1137-1138).
Supreme Court thereafter issued an order in which it, among other things, granted the Pollards' motion for leave to file a third amended third-party complaint that sought reformation of the Central Mutual policy based upon mutual mistake, reformation based upon unilateral mistake coupled with fraud, and declaratory relief. The third amended third-party complaint also asserted claims alleging that Central Mutual should be estopped from denying the Pollards indemnification and a defense, as well as that the Pollards were entitled to damages for Central Mutual's breach of the covenant of good faith and fair dealing. Supreme Court then issued an order that, as is relevant here, denied Central Mutual's motion to dismiss that pleading. Central Mutual appeals.[FN1]
"[*2]On a motion to dismiss pursuant to CPLR 3211 (a) (7) for failure to state a claim, [this Court] must afford the complaint a liberal construction, accept the facts as alleged in the pleading as true, confer on the nonmoving party the benefit of every possible inference and determine whether the facts as alleged fit within any cognizable legal theory" (Hilgreen v Pollard Excavating, Inc., 193 AD3d at 1136 [internal quotation marks and citations omitted]; see Matter of Mental Hygiene Legal Serv., Third Jud. Dept. v Delaney, 38 NY3d 1076, 1091 [2022]; Singe v Bates Troy, Inc., 206 AD3d 1528, 1530 [3d Dept 2022]). In short, "if we determine that [the Pollards] are entitled to relief on any reasonable view of the facts stated, our inquiry is complete and we must declare the complaint legally sufficient" (Aristy-Farer v State of New York, 29 NY3d 501, 509 [2017] [internal quotation marks, brackets and citation omitted]; see Doe v Bloomberg L.P., 36 NY3d 450, 454 [2021]). Applying that standard here — and noting that the third amended third-party complaint includes significant additional factual allegations aimed at remedying the deficiencies we identified in its predecessor — we are satisfied that the third amended third-party complaint states claims against Central Mutual, and therefore affirm.
We turn first to the reformation claims in that pleading, which will ultimately require proof "that the writing in question was executed under mutual mistake or unilateral mistake coupled with fraud and to demonstrate in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties" (Imrie v Ratto, 187 AD3d 1344, 1346 [3d Dept 2020] [internal quotation marks and citation omitted]; accord Hilgreen v Pollard Excavating, Inc., 193 AD3d at 1137). Mutual mistake means that "the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement" (Chimart Assoc. v Paul, 66 NY2d 570, 573 [1986]; see Imrie v Ratto, 187 AD3d at 1347; Cheperuk v Liberty Mut. Fire Ins. Co., 263 AD2d 748, 749 [3d Dept 1999]). Unilateral mistake coupled with fraud, in contrast, requires that "the parties have reached agreement and, unknown to one party but known to the other (who has misled the first), the subsequent writing does not properly express that agreement" (Chimart Assoc. v Paul, 66 NY2d at 573; see Rosen Auto Leasing, Inc. v Jacobs, 9 AD3d 798, 800 [3d Dept 2004]; Loyalty Life Ins. Co. v Fredenberg, 214 AD2d 297, 299 [3d Dept 1995]).
The Pollards had consistently maintained that the Central Mutual policy was intended to provide liability coverage for the subject property and that they had asked Central Mutual's agents to obtain that coverage for them as the owners of the subject property, as well as that both they and Central Mutual mistakenly believed that the Central Mutual policy provided that coverage. The written policy failed to conform with that claimed mistaken belief, [*3]as it designated Pollard Excavating as the named insured despite the fact that the Pollards owned the subject property. The third amended third-party complaint included additional factual allegations to illustrate how Central Mutual either shared the Pollards' misunderstanding as to who was covered by the policy or fraudulently misrepresented the true state of affairs while knowing that they were not entitled to coverage. In particular, the Pollards alleged that the Central Mutual policy first took effect on December 31, 2013 and that, by May 15, 2014, Central Mutual knew or should have known that the written policy inaccurately identified the named insureds because its agent conducted a risk assessment of the subject property and notified it that the Pollards owned the subject property. The Pollards further detailed how Central Mutual subsequently behaved in a manner that reflected either a mutual misunderstanding as to who was covered by the policy or Central Mutual's knowing misrepresentation that the policy covered the Pollards when it did not. In particular, the Pollards alleged that Central Mutual failed to comply with its internal policy of notifying them of the error in the named insureds and correcting the mistake, then repeatedly accepted the Pollards' premium payments and renewed the policy despite the fact that the policy as written did not cover the actual owners of the subject property.
In our view, the foregoing sufficiently detailed the Pollards' allegations of an agreement coupled with a mistake as to who was covered by the written Central Mutual policy (see CPLR 3013). The allegations regarding Central Mutual's conduct after being advised that the Pollards were the owners of the subject property — including that Central Mutual failed to correct the written policy for reasons that are unclear and accepted the Pollards' premium payments and renewed it — could support a finding of mutual mistake or "permit a 'reasonable inference' of the alleged [fraudulent] misconduct" by Central Mutual (Eurycleia Partners, LP v Seward & Kissel, LLP, 12 NY3d 553, 559 [2009], quoting Pludeman v Northern Leasing Sys., Inc., 10 NY3d 486, 492 [2008]; see CPLR 3016 [b]; compare Barclay Arms v Barclay Arms Assoc., 74 NY2d 644, 646-647 [1989]). As Supreme Court noted, discovery will be required to assess whether a mistake occurred and, if so, whether it was a mutual mistake or a unilateral mistake coupled with fraud that would allow the reformation claim to succeed. There is no doubt, however, that the factual allegations in the third amended third-party complaint leave "a reasonable chance, even if [Central Mutual] think[s] it small," of success on the merits (Rovello v Orofino Realty Co., 40 NY2d 633, 634 [1976]). We therefore agree with Supreme Court that the Pollards stated claims for reformation based upon mutual mistake or, alternatively, unilateral mistake coupled with fraud (see Warberg Opportunistic Trading Fund, L.P. v GeoResources, Inc., 112 [*4]AD3d 78, 86 [1st Dept 2013]). The third amended third-party complaint also, as a result, stated a claim for a judgment declaring that the Pollards were entitled to a defense and indemnification under the Central Mutual policy (see Hallock v State of New York, 32 NY2d 599, 603 [1973]; Matter of Dashnaw v Town of Peru, 111 AD3d 1222, 1225 [3d Dept 2013]).
Central Mutual's remaining arguments do not demand extended discussion. Accepting the allegations in the third amended third-party complaint as true, the Pollards sufficiently articulated how Central Mutual had agreed to provide them with coverage, accepted premiums for a policy that purportedly did so, and then acted in a manner that "destroy[ed] or injur[ed] the right of [the Pollards] to receive the fruits of the contract" (Dalton v Educational Testing Serv., 87 NY2d 384, 389 [1995] [internal quotation marks and citation omitted]). The Pollards therefore stated a claim for consequential damages arising out of a breach of the implied covenant of good faith and fair dealing (see Michaels v MVP Health Care, Inc., 167 AD3d 1368, 1373-1374 [3d Dept 2018]; 25 Bay Terrace Assoc., L.P. v Public Serv. Mut. Ins. Co., 144 AD3d 665, 667-668 [2d Dept 2016]; see also Bi-Economy Mkt., Inc. v Harleysville Ins. Co. of N.Y., 10 NY3d 187, 195-196 [2008]). The pleading also, in view of the allegations that Central Mutual unambiguously promised that the Pollards would receive a defense and indemnification under the terms of the agreement and that the Pollards reasonably relied upon that promise to their detriment, stated a viable claim for promissory estoppel (see Villnave Constr. Servs., Inc. v Crossgates Mall Gen. Co. Newco, LLC, 201 AD3d 1183, 1186 [3d Dept 2022]; Forman v Guardian Life Ins. Co. of Am., 76 AD3d 886, 888-889 [1st Dept 2010]). Finally, in conjunction with those allegations, the further allegation that Central Mutual knowingly misrepresented or concealed the fact that the Pollards were not entitled to a defense and indemnification under the Central Mutual policy and that they justifiably and detrimentally relied upon that conduct were sufficient to state a claim for equitable estoppel (see Forman v Guardian Life Ins. Co. of Am., 76 AD3d at 889).
Clark, Pritzker, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: After this appeal was perfected and scheduled to be heard, counsel for Central Mutual advised this Court that John J. Pollard III had passed away. We have since been advised that an administrator has been appointed for the estate of John J. Pollard III and, upon the parties' stipulation, substituted as a party in his stead (see CPLR 1015, 1021). The administrator has retained counsel and has "adopt[ed] the legal position[s] [previously] advanced by" John J. Pollard III.